**Roy MARKON, Plaintiff,**

v.

**UNICORP AMERICAN CORPORATION, Defendant.**

**Civ. A. No. 85–2669.**

United States District Court, District of Columbia.

Sept. 12, 1986.

Francis G. McKenna, Anderson & Pendleton, Washington, D.C., for plaintiff.

Mark London, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Washington, D.C., for defendant.

## OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Defendant Unicorp American Corporation moves this Court for summary judgment on the grounds that the contract plaintiff seeks to enforce is void as against public policy. For the reasons set forth below, the Court finds it must grant defendant's motion.

In this action, plaintiff seeks to recover a commission of $125,000 allegedly due and owing under a contract he entered into with REIT of America, Inc. Plaintiff and REIT executed a "Consulting Agreement" in which plaintiff undertook the renegotiation of a lease of real property on behalf of REIT, the owner, in exchange for a fee. The agreement provided that payment of the fee was contingent upon the owner's acceptance of any lease negotiated by plaintiff, such acceptance to be evidenced by the owner's execution of the lease. After acquiring the property from REIT, defendant Unicorp executed such a lease with the tenant, the General Services Administration (GSA). Plaintiff claims defendant received the benefit of his services and, having assumed REIT's obligations, is liable to him for the commission.

In moving for summary judgment, defendant directs the Court's attention to paragraph 19 of the Supplemental Lease Agreement, which provides:

The lessor warrants that no person or selling agency has been employed or retained to solicit or secure this Lease upon an agreement or understanding for a commission, percentage, brokerage or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Lessor for the purpose of securing business. For breach or violation of this warranty the Government shall have the right to annul this lease without liability or in its discretion to deduct from the rental or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage or contingent fee. (Licensed real estate agents or brokers receiving listing on property for

rent in accordance with general business practice, and who have not obtained such licenses for the sole purpose of effecting this Lease, may be considered as bona fide employees or agencies within the exception contained in this clause.)

Paragraph 19 simply parrots the language of 41 U.S.C. § 254(a) and the implementing provisions of the Federal Procurement Regulations, 41 C.F.R. § 1–1.500 *et seq.*, which proscribe "influence peddling" in government contracts. Defendant argues that the agreement plaintiff seeks to enforce violates this prohibition, since plaintiff was retained on a contingency basis to secure a new lease with GSA, a government agency. Plaintiff argues in response that section 254(a) and its implementing regulations are not applicable to this case and that, even if they were, a question of material fact exists as to whether he falls within the exceptions created by the section.

In urging that the statute does not govern this case, plaintiff relies on *Vander Zee v. Karabatsos*, 589 F.2d 723 (D.C.Cir.1978). In that case, Savage/Fogarty Company, the owner of certain property, contacted appellant and asked if he could assist in the renegotiation of a lease held by GSA. Vander Zee declined, but offered to refer someone who could. He eventually settled on appellee Karabatsos, who agreed to undertake the renegotiation. According to Vander Zee, the two men orally agreed that Vander Zee would receive one-third of all fees eventually earned by Karabatsos. The district court overturned a jury verdict in favor of Vander Zee, in part because it believed the contract was unenforceable under section 254(a). The Court of Appeals, however, reversed, noting that there was no contingent fee arrangement between the property owner, Savage/Fogarty, and Karabatsos, and that any contract between Vander Zee and Karabatsos was irrelevant to the statute. The Court stated

[section 254(a)] prohibits a contractor such as Savage/Fogarty from employing someone to solicit or secure a government contract on a contingent fee basis. In the present case, however, Savage/Fo-

garty entered no contingent fee arrangement with any party in an attempt to procure the GSA leasing contract. Their ownership of the Rosslyn office building put them in a direct negotiating position with the GSA. The contingent fee arrangement between Karabatsos and Vander Zee thus was unrelated to the procurement of a government contract.

*Id.* at 727 n. 4 (emphasis supplied).

Plaintiff apparently finds in this passage, and in particular the underscored sentence, a ruling that because Savage/Fogarty simply sought to renegotiate an existing lease, the person it employed for this purpose was not engaged in "securing" a government contract on a contingent fee basis. The Court cannot agree. *Vander Zee* simply stands for the proposition that a contingent fee contract between a real estate agent and a third person not a party to the government contract does not fall within section 254(a)'s reach. Nowhere does the *Vander Zee* court suggest that a contingent fee contract to obtain a lease with the government is enforceable because the lease is secured through renegotiation. Nor does it suggest that the process of renegotiating somehow renders a contingent fee arrangement non-contingent. The Court explicitly stated that "Savage/Fogarty entered no contingent fee arrangement with any party...." The appellate court did not explain exactly what type of arrangement Savage/Fogarty actually had with Karabatsos, but this Court does not read the underscored sentence above to mean that simply because the company owned the property to be leased, it could not have employed Karabatsos on a contingent basis.

In the present case the facts are undisputed that plaintiff was hired to secure, through renegotiation, a new lease with the government, and that his commission was contingent on his negotiating a lease acceptable to the owner. Such contracts are contrary to federal policy and are therefore unenforceable. *Quinn v. Gulf & Western Corp.*, 644 F.2d 89, 93 (2d

Cir.1981). This is so even though the government contractor has benefited from the illegal contract;[1] indeed, courts have refused to permit recovery on a *quantum meruit* basis.[2] *LeJohn Mfg. Co. v. Webb,* 222 F.2d 48, 52 (D.C.Cir.1955).

Plaintiff next contends that he has alleged facts sufficient to raise a material question as to whether he falls within one of the two exceptions to the statute. He relies principally on the fact that the Consulting Agreement narrowly circumscribed his authority to negotiate the lease, vesting total discretion in the property owner to determine "[a]ll terms and conditions of the Lease," DX 1 at 2; and on his expectation that his relationship with REIT would be a continuing one. Affidavit of Roy Markon at 2, attached to Plaintiff's Supplemental Opposition to Defendant's Motion for Summary Judgment. Plaintiff's expectation of a continuing relationship with REIT, which he based on his perceptions of the company's needs as well as conversations he had with REIT's former president, is contradicted by the agreement itself, however, which was limited to 240 days "unless extended by mutual agreement ... for additional term(s) of ninety days each." DX 1 at 2. The contract, therefore, contemplated only a short-term relationship based on a single lease renegotiation. Moreover, the contract expressly stated that the property owner granted plaintiff an "exclusive revocable right to negotiate with GSA regarding the terms of a Lease as representative, *but not as employee of,* Owner." *Id.* (emphasis supplied).[3] In addition, the contract provided that plaintiff would bear his own expenses in preparing a lease and any other supporting documents and that he would indemnify the owner for any negligence or willful misconduct in the performance of his contractual duties. Thus, not only does the contract's duration belie plaintiff's claim of an employer-employee relationship, its substantive terms demonstrate that no such relationship was intended or created. The fact that plaintiff was not given authority to execute any lease or other tenancy agreement does not alter that fact; indeed, such limited authority is only natural in a contract that made plaintiff's receipt of his commission contingent upon the owner's acceptance of the lease.

This case is a far cry from *Companhia Atlantica De Desenvolvimento E Exploracao v. United States,* 180 F.Supp. 342, 148 Ct.Cl. 71 (1960), the sole authority cited by plaintiff in advancing his claim of a bona fide employee relationship. There, the plaintiff signed an agreement with two persons, Westbrook and Pulverman, under which the two were appointed exclusive sales agents in certain countries for a period of five years. The Court found that such exclusive agencies, for such a substantial period of time, and in the only countries in which there was any prospect of obtaining the necessary contracts, rendered the two men employees of the plaintiff for purposes of the statute barring contingent fees arrangements. Here, as just noted, the contract is of very limited duration, concerns a single transaction, and expressly disclaims any employer-employee relationship.

In short, plaintiff has failed to present facts such that summary judgment may not be granted against him. However harsh the result in this case, the Supreme Court recently stated that "there is no is-

---

1. The government may exercise its right under 41 C.F.R. § 1–1.503 to recover from Unicorp the amount of any contingent fee that it agreed to pay in violation of its warranty or to annul the contract. This right, however, belongs to the government, not plaintiff.

2. Plaintiff's recent amendment of his complaint to add such a claim, therefore, does not prevent the entry of summary judgment against him.

3. The contract further provides that it represents "the entire agreement of the parties hereto with respect to the matters covered hereby, and supersedes all prior arrangements and understandings ... and no other agreement, statement or promise made by either party hereto which is not contained herein shall be binding or valid." The Court cannot credit plaintiff's claim, therefore, that he should be viewed as a bona fide employee of the owner, in the face of the contract's express language to the contrary, and its prohibition on parol evidence.

sue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is hereby colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Here plaintiff has offered his expectation, based on conversations with REIT's former president and his own perceptions of that company's needs, that his relationship with the property owner would be continuing, when the contract itself was of a short duration and concerned only a single transaction. Moreover, the expectation is parol evidence, offered to contradict an express provision of a contract that precludes consideration of such evidence. Nor does the Court view the restrictions placed on plaintiff's authority in negotiating the lease as inconsistent with the contractual stipulation that plaintiff was not an employee of the owner. These allegations do not raise a triable issue of fact, and accordingly summary judgment is appropriate.

■ Finally, plaintiff contends that he may fall within the statutory exception for "bona fide established commercial or selling agencies." Paragraph 19 of the Supplemental Lease provides that "Licensed real estate agents or brokers receiving listings on property for rent in accordance with general business practice, ... may be considered as bona fide employees or agencies within the exception contained in this clause." As this Court discussed in its earlier Order of April 23, 1986, plaintiff is not licensed as a real estate agent in the District of Columbia, nor, so far as the record reveals, is he a licensed agent in any other jurisdiction. Plaintiff's sole support for his suggestion that he nevertheless fits within the exception for "selling agencies" is the fact that "[t]he exemption in the statute is not restricted to licensed brokers." Supplemental Opposition at 4. This

point may be conceded; it does nothing, however, to discharge plaintiff's affirmative burden of raising a genuine issue of material fact. He has offered no evidence whatever to demonstrate that he was in the business of listing properties for rent or was otherwise engaged as a real estate agent.[4] On the present record, the Court has no choice but to grant defendant summary judgment on this issue as well.

Accordingly, for all the foregoing reasons, it is this 12th day of September, 1986,

ORDERED that judgment be and it hereby is entered in favor of defendant Unicorp American Corporation and against plaintiff Roy Markon; and it is

FURTHER ORDERED that this complaint be and it hereby is dismissed with prejudice; and it is

FURTHER ORDERED that, in view of the foregoing, defendant's counterclaim for one dollar compensatory damages and $124,999 in punitive damages be and it hereby is dismissed without prejudice for a period of 15 days. Should defendant fail to move to reinstitute this counterclaim within the 15–day period, the counterclaim shall, without further order of this Court, stand dismissed *with* prejudice.

---

**4.** In an affidavit attached to his opposition to defendant's earlier motion to dismiss, plaintiff stated that he was a general partner in a real estate consulting business until March, 1984. The contract in dispute was executed in August, 1984.